# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR MITKAL and, | ) | |
| MARY ANNE MITKAL, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 09 CV 3355 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| UNITED PARCEL SERVICE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of a series of motor vehicle accidents that occurred on an Indiana highway during a snowy morning in February, 2009. Before the Court is a motion for partial summary judgment [50] filed by Plaintiffs Victor Mitkal and Mary Anne Mitkal (collectively "Plaintiffs"). Plaintiffs ask the Court to find that Illinois law controls with respect to the allocation of fault to non-parties and the application of the collateral source rule to evidence regarding damages, that United Parcel Service, Inc., (incorrectly sued as United Parcel Service Co. ("Defendant")) is liable, and that Defendant's driver's conduct was willful and wanton as a matter of law. In this order, the Court takes up only the first part of Plaintiffs' motion, and holds that Indiana law governs this action.[1] Accordingly, Plaintiffs' motion [50] is denied in part.

---

[1] There are currently two cross motions for partial summary judgment pending before the Court. Defendant's motion [45] argues for partial summary judgment as to Counts III and IV of Plaintiffs' complaint, wherein Plaintiffs allege that Defendant's driver's conduct was willful and wanton. As noted above, Plaintiff's motion [50] asks the Court to find that Illinois law governs this action, that Defendant is liable, and that Defendant's driver's conduct was willful and wanton as a matter of law. Plaintiffs have asked the Court to expedite its consideration of the choice of law question presented in its motion, because resolution of that issue could affect Plaintiffs decision whether or not to add additional defendants to this lawsuit, and Plaintiff would need to effectuate such an action by February 3, 2011—the end of the limitations period for their claims. The Court will address Defendant's motion for summary judgment and the remainder of Plaintiffs' motion in a subsequent order.

Defendant's motion to file a surreply, instanter [68] is granted.

## I.      Background

The facts relevant to the choice of law analysis are not in dispute.  On the morning of February 3, 2009, Victor[2] and Marry Anne Mitkal were involved in a series of accidents that occurred on Interstate 65 in Boone County, Indiana.  Boone County is situated along the outskirts of Indianapolis.  Victor was driving and Mary Anne was in the passenger seat.  Snow was falling and accumulating on the roadway.  Visibility was limited to 500 feet.

The two accidents involving Plaintiffs occurred in short succession.  At 8:38 a.m., a southbound truck driven by non-party David Cole attempted to stop (for another accident ahead on the road), slid on the slippery road, and jack-knifed on the median, leaving the truck's tractor in the left southbound lane.  Victor, who was driving behind Cole's truck, tried to move over to the right but lost control of his van.  Plaintiffs' van spun around and struck Cole's trailer, veered right to hit the right guardrail, and came to rest on the right shoulder within inches of the right guardrail.  The car had spun completely around and had come to rest with the front of the car pointing south.  Victor exited the van out of the left, drivers' side door.

Seconds later, Defendant's employee, Juan Howard, driving a double tandem trailer, hit the right guardrail and rear-ended another vehicle driven by non-party Judith Tonk.  After hitting Tonk, Howard crashed into Plaintiffs' van, causing the van to spin around 180 degrees.  The van struck Victor, launching his body into the center of the highway and causing him to sustain severe injuries.

---

[2] For ease of reference and where appropriate, the Court will refer to Plaintiffs Victor and Mary Anne Mitkal by their respective first names.

Plaintiffs were treated for their injuries in both Illinois and Indiana. Victor's injuries were first diagnosed in Indiana and Victor underwent a major surgery in Indiana. Victor spent the next 11 months in rehabilitation in Illinois.

Plaintiffs reside in Cook County, Illinois and are Illinois citizens. Defendant is a Delaware corporation with its corporate headquarters in Georgia. Defendant conducts substantial business in both Indiana and Illinois and has facilities and employs numerous employees in both states. Howard is an Indiana resident. The employment relationship between Howard and Defendant is centered in Indianapolis, Indiana, and Howard received his training in Indiana.

On May 4, 2009, Plaintiffs sued Defendant in the Circuit Court of Cook County, Law Division. Defendant removed the case on June 3, 2009 [1]. On July 27, 2009, Defendant moved to transfer this case to the Indianapolis Division of the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) [13]. This Court denied Defendant's motion in its order of December 4, 2009.

On January 19, 2010 (more than eight months after Plaintiffs filed suit), the parties filed the "revised joint status report" that is the subject of the instant dispute [27]. The first page of the report contains the statement "[t]he parties stipulate that Indiana Law shall apply." The document contains the electronic signatures of Scott C. Bentivenga and Michael Wroblewski (attorneys for Defendant), and Matthew A. LaSusa (attorney for Plaintiffs). Mr. Bentivenga (attorney for Defendant) actually electronically filed the stipulation.

As explained in detail below, Indiana law applies to this action both because (1) Indiana is the state with the more significant relationship to the parties and the occurrence giving rise to

this suit; and (2) the stipulation of Indiana law entered into between the parties is reasonable and enforceable.

## II. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Choice of Law

## A. Legal Standard for Choice of Law Analysis

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state in which they sit. See, *e.g. Wildey v. Springs,* 47 F.3d 1475, 1480 (7th Cir. 1995); see also *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Thus, this Court will apply Illinois choice-of-law principles. Illinois courts have developed a three-step analysis for resolving a choice of law question. To determine which state's law applies, the court: (1) isolates the issues involved in the case and defines the conflict; (2) identifies the policies embraced in the laws of each of the competing states; and (3) examines the contacts of the respective jurisdictions to determine which has a superior connection with the occurrence and thus which one has a superior interest in having its policy or law applied. *Torraco v. American Airlines, Inc.*, 1996 WL 6560, *7 (N.D. Ill. Jan. 4, 1996).

In tort cases, once a conflict has been identified, Illinois uses the "most significant relationship test" from the Restatement (Second) to resolve the choice-of-law issue. See *Suzik v. Sea-Land Corp.,* 89 F.3d 345, 348 (7th Cir. 1996). In analyzing choice-of-law issues, the Seventh Circuit has adopted the concept of "depecage:" "the process of applying rules of different states on the basis of the precise issue involved." *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 610-11 (7th Cir. 1980); see also *Spinozzi v. ITT Sheraton Corp.,* 174 F.3d 842, 848 (7th Cir. 1999).

Under the most significant relationship test, the Restatement (Second) lists factors relevant to the choice of the applicable rule of law:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issues,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws* § 6 (1971). In applying the principles of Section 6 to determine the state with the most significant relationship when considering an issue in a tort case, the Court is guided by Restatement (Second) of Conflicts of Law § 145(2), which sets out multiple contacts that a court should analyze to determine which state has the most significant relationship with the litigation. *Restatement (Second) of Conflict of Laws* § 145 cmt. e (1971). These contacts include (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Restatement (Second) of Conflict of Laws* § 145(2); accord *Piska v. General Motors Corp.*, 2004 WL 2423830 (N.D. Ill. Oct. 28, 2004) (identifying and applying Restatement factors); *Ness v. Ford Motor Co.*, 1993 WL 996164, *1 (N.D. Ill. July 20, 1993) (same).

"Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." See *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990); see also *id*. at 977-87 (collecting cases); *Ness,* 1993 WL 996164, at * 1. The Restatement (Second) of Conflict of Laws teaches that "[i]n the case of personal injuries * * * the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law." *Id.*; § 145 cmt e. The Restatement further teaches that "[w]hen the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the

tort." *Restatement (Second) of Conflict of Laws* § 145 cmt. e.; see also *Id*. at cmt. (f) ("The relative importance of the contacts mentioned above varies somewhat with the nature of the tort involved. This, the place of injury is of particular importance in the case of personal injuries and injuries to tangible things."). "Illinois law presumes that the law of the state where the injury occurred will govern 'unless another state has a more significant relationship to the occurrence or to the parties involved.'" *Miller*, 914 F.2d at 978 (quoting *Ferguson v. Kasbohm,* 475 N.E.2d 984, 986 (Ill. App. Ct. 1st Dist. 1985)); see also *Spinozzi v. ITT Sheraton Corp.,* 174 F.3d 842, 844 (7th Cir. 1999) (collecting cases and stating, "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is-the place where the tort occurred"); *Ness,* 1993 WL 996164, at *1.

B.     **Areas of Potential Conflict**

In this case, Plaintiffs identify three areas of potential conflict: (1) what evidence may be presented to the jury regarding the value of medical treatment received by Plaintiffs; (2) the application of the collateral source rule to lost wages; and (3) whether the jury can apportion fault among both parties and non-parties. The Court agrees with Plaintiffs that the law in Illinois and Indiana is different in regard to each of the three points, as explained below.

For the first issue, Plaintiffs cite an Illinois appellate court decision, *Arthur v. Cantour*, 803 N.E. 2d 647 (Ill. App. Ct. 3rd Dist. 2004), for the proposition that "[u]nder Illinois law, any difference in the amount charged and the amount paid by the insurance company to settle the bill does not decrease the damages paid to the plaintiff. Therefore, under Illinois law, Mr. Mitkal is entitled to the full amount charged for medical services and any evidence of a reduction negotiated by his insurance company is inadmissible as a violation of the collateral source rule." (Pl. Mot. [52] at 7). As an initial matter, the appellate court decision to which Plaintiffs cite is by

no means the last word spoken by the Illinois courts on this issue. See *Arthur v. Cantour*, 833 N.E. 2d 847 (Ill. 2005), and *Wills v. Foster*, 892 N.E. 2d 1018 (Ill. 2008). In any event, Plaintiffs' summary of the law in Illinois is partly inaccurate. Under Illinois law, a plaintiff is not "entitled to the full amount charged for medical services." Instead, a plaintiff is entitled to recover the "*reasonable value* of her medical expenses." *Wills*., 892 N.E. 2d at 1024-25 (citing *Arthur*, 833 N.E. 2d at 852-53) (emphasis in original); see also *Id.* at 1030. In Illinois, a bill paid in full constitutes *prima facie* evidence of reasonableness. *Id*. at 1025. *Arthur* held that in a situation where the insurance company receives a discount, a plaintiff is permitted to submit the entire amount of her billed medical expenses to the jury and is not limited to presenting the amount that her private insurance company actually paid to her health-care providers. *Wills*, 892 N.E. 2d at 1021 (citing *Arthur*, 833 N.E. 2d at 853-854). This is so because the amount initially charged is highly relevant to the "reasonable value" of the services provided. *Id*. However, under Illinois law, a defendant "may not * * * introduce evidence that the plaintiff's bills were settled for a lesser amount because to do so would undermine the collateral source rule." *Id*. at 1033. Instead, a defendant must challenge the reasonableness of the bill by other means.

Indiana also considers the "proper measure of medical expenses" to be the "reasonable value of such expenses." *Stanley v. Walker*, 906 N.E. 2d 852, 856 (Ind. 2009). However, Indiana law differs from Illinois law because Indiana's "collateral source statute does not bar evidence of discounted amounts in order to determine the reasonable value of medical services." *Id*. at 858; see also *Id*. ("To the extent the adjustments or accepted charges for medical services may be introduced into evidence without referencing insurance, they are allowed."). Accordingly, the Court agrees that Plaintiffs have identified a conflict between Illinois and Indiana law in this respect.

On to the second area of potential conflict. Victor is an employee of the Chicago Police Department. According to Plaintiffs, Victor's union negotiated extended paid time off in exchange for a lower wage. There appears to be no dispute that under the law of either state, Victor could recover the difference between what his wages would have been had he not been disabled and the lower amount he received from his employer. However, Plaintiffs contend that under Illinois' collateral source rule, the amounts gratuitously paid by the Chicago Police Department are inadmissible to prove that Victor's lost wages should be reduced. *Cooney v. Hughes*, 34 N.E. 2d 566, 570 (Ill. App. Ct. 1st Dist. 1941) (when salary of injured traffic policeman was gratuitously paid by city during policeman's absence, it would not warrant any deduction from actual damages which policeman was entitled to recover); *Fultz v. Peart*, 494 N.E. 2d 212, 221 (Ill. App. 5th Dist. 1986) ("Evidence that plaintiff received gratuitous payments from his employer during a period of disability is not admissible in a civil suit for damages and would not reduce defendants' liability.") (internal citations omitted); *Laird v. Illinois Cent. Gulf R. Co.*, 566 N.E. 2d 944, 954 (5th Dist. 1991) (same).[3]

In Indiana, such payments likely would not be inadmissible under its version of the collateral source rule, which is found in Ind. Code § 34-44-1-1 to § 34-44-1-3. Under the statute, only the following collateral source payments are barred: (A) payments of life insurance or other death benefits; (B) insurance benefits that the plaintiff or members of the plaintiff's family have paid for directly; or (C) payments made by the state or the United States or any agency, instrumentality, or subdivision thereof. Ind. Code § 34-44-1-2. As the Chicago Police Department is not an "agency, instrumentality, or subdivision" of Illinois (rather, it has no

---

[3] See also *Wills*, 892 N.E. 2d at 1031 (overruling *Peterson v. Lou Bachrodt Chevrolet Co.,* 392 N.E.2d 1 (Ill. 1979) which had held that the plaintiff could not recover the value of free medical services provided by Shriners' Hospital for Crippled Children because the policies underlying the collateral source rule did not apply when the plaintiff incurred no expense, obligation, or liability in receiving the services for which compensation is later sought).

9

separate legal existence apart from the City of Chicago, see *e.g. Harrison v. City of Chicago*, 2005 WL 3542576, at *2 (N.D. Ill. Dec.22, 2005)) gratuitous payments that it made to Victor would likely not be barred by the collateral source rule.

Finally, Illinois and Indiana law clearly differs in the last respect identified by Plaintiffs: In Illinois, a jury may apportion fault among the parties, including all plaintiffs and defendants. See 735 ILCS 5/2-1117; *Ready v. United/Goedecke Services, Inc.*, 905 N.E. 2d 725 (Ill. 2008). However, fault may not be apportioned to non-parties. *Id*. In Indiana, however, "[t]he jury shall determine the percentage of fault of the claimant, of the defendant, and of any person who is a *nonparty*." Ind. Code. § 34-51-2-7 (b)(1) (emphasis added).

### C. Policies Underlying the Law of Each State and "Superior Connection" Analysis

Having found that the law of Indiana and Illinois conflict on three points potentially at issue in this case, the Court now proceeds to determine which law applies for each of the areas of conflict. After examining the policies embraced in the laws of each of the competing states, the many factors identified as potentially relevant in the Restatement, and reviewing the parties' arguments, nothing in the instant case overcomes the general presumption in favor of applying the law of the state in which the alleged tortious harm occurred – *i.e.*, Indiana.

First, there is nothing in the record nor in the briefs submitted by Plaintiffs to suggest that Illinois has a more significant relationship to the *occurrence* than does Indiana. The injury occurred in Indiana, and the allegedly-negligent driving which caused the injury occurred in Indiana. To the extent that Plaintiffs intend to challenge the training that Howard received from Defendant, that too occurred in Indiana. As discussed above, the Restatement clearly teaches that in cases such as this (a tort claim for personal injury where the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there), the

presumption that *lex loci delicti* should apply is particularly strong. Plaintiffs cite *Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1058 (7th Cir. 1987), for the proposition that the place of injury is "only a factor in determining the choice of law" and is "not dispositive." (Pl. Reply [63] at 2). That statement certainly is true, but Plaintiffs have not identified any special connection that this suit has with Illinois to overcome the strong presumption that Indiana law should apply. In *Kaczmarek*, for example, while the accident at issue happened in Indiana, it was unclear whether the activity that caused the accident occurred in Indiana or Illinois. *Id.* at 1058.

Plaintiffs' only (and oft-repeated) argument is that "Illinois law governs this case because none of the parties are residents of Indiana, Illinois is the forum state, and Illinois is the domicile of all potential beneficiaries." (Mot. [52] at 2). Plaintiffs have cited no case that holds that the law of the forum state receives special consideration in the Illinois choice of law analysis. While the Plaintiffs are domiciled in Illinois, "this single factor is not sufficient to overcome the presumption that the local law of the State in which the injury occurred governs this action." *Piska*, 2004 WL 2423830, at *5 (quoting *Ferguson,* 475 N.E.2d at 987).

*Ness v. Ford Motor Co., supra*, addressed a similar series of circumstances. In *Ness,* the car in which the passenger, an Illinois resident, was riding crashed in Iowa. The passenger claimed that Illinois law applied, but the manufacturer, a Michigan company, raised several defenses, including contributory negligence, based on Iowa statutes. The court in *Ness* ruled, in relevant part, that Iowa law should apply. Specifically, the court noted that "Ness is correct that Iowa has no particular interest in an Illinois resident's product-liability claim against a Michigan manufacturer. But Illinois law has not taken the position that an Illinois court must apply Illinois law every time one party to a tort suit is an Illinois resident." *Ness,* 1993 WL 996164, at *2; see also *Piska*, 2004 WL 2423830, at *5 (adopting analysis from *Ness*). In *Ness* and *Piska,* as in the

11

instant case, the Plaintiffs were Illinois residents, but the Defendant, while operating in many states, had no particular relationship with Illinois. *Ness*, 1993 WL 996164, at *2; *Piska*, 2004 WL 2423830, at *3. Consequently, Illinois had no special interest in the outcome of the case. See *id.*[4] As the court in *Ness* explained:

> Ford has no particular relationship with Illinois; while Ford sells millions of dollars worth of automobiles in Illinois, [it] does [so] in other states. Nor does Illinois have any particular relationship to the occurrence. The fact that the car was headed toward Illinois when it rolled over is at least as fortuitous as the fact that it rolled over in Iowa. The laws of physics act upon a car without regard to where the trip began or where it was intended to end. To the extent that the negligence of the driver may become an issue, Iowa has an interest in the conduct of a driver on its roads; Illinois has none.

*Id.* at *3. Here, both Howard and Plaintiffs were coming from Illinois when the accident occurred; Plaintiffs were headed through Indiana to Georgia. Moreover, while it may have been fortuitous that the accident happened in Indiana, it was not fortuitous that Plaintiffs were in Indiana. They traveled there voluntarily, and while on Indiana roads Plaintiffs purposefully availed themselves of the benefits and restrictions of Indiana laws. See *Piska*, 2004 WL 2423830, at *5 (applying Indiana law to action involving Illinois plaintiffs who suffered car accident that occurred in Indiana).[5]

Focusing, as the Court must do, on the particular areas where the laws of the two states conflict, the Court cannot see any reason why Illinois has a superior interest in this case. For the first area of conflict, Illinois and Indiana law are nearly identical: In both jurisdictions, a plaintiff may recover the "reasonable value" of his medical expenses. As discussed above, the only difference between Illinois and Indiana law in this respect is that in Illinois, a defendant may not

---

[4] *Ness* and *Piska* also specifically distinguished cases where both parties to a lawsuit were Illinois residents. In those cases, Illinois law would apply. See *Piska*, 2004 WL 2423830, at *5. Such cases do not control here, as Defendant is not an Illinois resident.

[5] The last Restatement factor, the place where the relationship between the parties is centered, is inapplicable to this case.

12

introduce evidence that the plaintiff's bills were settled for a lesser amount but instead must challenge the reasonableness of the bill by other means. Plaintiffs offer no explanation as to why Illinois has a superior interest in seeing its rule regarding what evidence can appropriately be introduced to prove the reasonableness of a medical bill be used in all cases involving Illinois residents, regardless of where the medical bills were incurred (here, both in Indiana and Illinois).

Similarly, on the third issue (whether fault can be apportioned to non-parties), Plaintiffs do not identify how the difference between Indiana and Illinois law would affect them. The Illinois Supreme Court has stressed that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.,* 879 N.E.2d 893 (2007) (quoting *Barron v. Ford Motor Co.,* 965 F.2d 195, 197 (7th Cir. 1992)). Here, as the parties have stressed in requesting that the Court expedite its ruling on the choice of law issue, the statute of limitations on Plaintiffs' claims has not run—Plaintiffs theoretically could obtain a full recovery under Indiana law by simply adding any additional parties to their lawsuit.

With respect to the second issue—the treatment of the gratuitous payments made by Victor's employer under the respective states' collateral source doctrines—Plaintiffs argue that Illinois has expressed "a strong policy in favor of a broad application of the collateral source rule." (Pl. Mot.[52] at 10). Indiana, by contrast, in enacting § 34-4-36-1 had the twin goals of (1) enabling the trier of fact in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss; and (2) ensuring that a prevailing party not recover more than once from all applicable sources for each item of loss sustained. *Shirley v. Russell*, 69 F.3d 839, 842 (7th Cir. 1995). In view of the many factors discussed above that point towards the strong connection that Indiana has with this lawsuit and the presumption that Indiana

13

law should apply, Plaintiffs have failed to identify compelling circumstances why Illinois policy with regard to the collateral payments should control. After all, "Indiana has a strong interest in having its law applied to a dispute that concerns the consequences of torts committed within its borders." *Miller*, 914 F.2d at 979 (internal citation omitted).

For all of these reasons, the Court concludes that Indiana law applies to this action because Indiana is the state with the more significant relationship to the parties and the occurrence giving rise to this suit. Simply put, the only factor suggesting that Illinois law should apply is that Plaintiffs are Illinois citizens. On the other side of the scale, the employment relationship between Defendant and its driver (Howard—an Indiana resident) is centered in Indiana, Howard received his training in Indiana, the accident took place on an Indiana roadway, and Plaintiff received at least some of his medical care in Indiana.

## IV. The Indiana Law Stipulation is Reasonable and Enforceable

An independent reason why Indiana law applies to this dispute is that the parties have so stipulated. As discussed above, the January 19, 2010 revised joint status report contains the following stipulation: "The parties stipulate that Indiana Law shall apply." Upon careful consideration of the parties' arguments and the complete record in this case, the Court finds no reason to set aside the stipulation.

Because this Court applies Illinois choice of law rules, *Klaxon Co.*, 313 U.S. 487 (1941), the Court evaluates whether the choice of law stipulation is binding under those rules. See *Twohy v. First National Bank of Chicago*, 758 F.2d 1185, 1190 (7th Cir. 1985). "Under Illinois choice of law rules, litigants can, by stipulation, formal or informal, agree on the substantive law to be applied to their case, as long as the stipulation is reasonable." *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 (7th Cir. 1995) (internal quotations omitted); see also *Cates v.*

*Morgan Portable Building Corp.,* 780 F.2d 683, 687-88 (7th Cir. 1985) ("the parties to a lawsuit can, within broad limits, stipulate to the law governing their dispute" either through express or "implied stipulation"). "[U]nder Illinois law, choice-of-law stipulations are effective so long as they bear a reasonable relationship to the dispute and do not violate public policy or the court's subject-matter jurisdiction." *Baltimore Orioles, Inc. v. Major League Baseball Players Asso.*, 805 F.2d 663, 681 n.3 (7th Cir. Ill. 1986) (citing *Twohy*, 758 F.2d at 1190-91). The parties could not stipulate, for example, that the "Code of Hammurabi" governs their dispute, since a court would lack power to render a decision based on such a code, calling into question the court's subject matter jurisdiction. *Twohy*, 758 F.2d at 1191; see also *Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir. 1982). Reasonable stipulations of choice of law are honored in both contract and tort cases. *Lloyd*, 694 F.2d at 495. "[I]t is the exceptional circumstance that a federal court, or any court for that matter, will not honor a choice of law stipulation." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

In this case, for the parties to stipulate to Indiana law is certainly reasonable; for the reasons explained above, Indiana law assuredly bears a close relationship to this dispute. Plaintiffs have not identified anything about the application of Indiana law that would be contrary to public policy. Similarly, nothing about the application of Indiana law would call into question the Court's subject matter jurisdiction. It is also persuasive to the Court that Defendant has relied on the stipulation over the course of the litigation, see (Def. Mem. [72] at 2), and presumably would be prejudiced were Plaintiffs allowed to withdraw their agreement on this issue.

In attempting to avoid the stipulation, Plaintiffs argue that: (1) the stipulation is contained in a Rule 26(f) joint status report, and such documents are not intended to contain binding

stipulations; (2) Planitiffs were unaware of specific facts to reach a conclusion as to the choice of Indiana law at the time that the stipulation was made; (3) Plaintiffs were "unaware that [a choice of law provision] was included in the final draft" of the report; and (4) the parties never discussed Indiana law and did not exchange letters, memorandum, documents, or case law regarding the choice of Indiana law. (Pl. Reply [63] at 2; Pl. Resp. to Surreply [71] at 2). The Court will address each of Plaintiffs' arguments above but first will discuss the standard under which the Court considers Plaintiffs' motion to set aside the stipulation.

"A stipulation is binding unless relief from the stipulation is necessary to prevent a 'manifest injustice' or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law." *Southworth v. Board of Regents of University of Wisconsin System*, 307 F.3d 566, 571 (7th Cir. 2001) (quoting *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1206 (7th Cir. 1989)). "As with other matters of trial management, the district court has broad discretion to decide whether to hold a party to its stipulation; the district court's decision will be overturned on appeal only where the court has clearly and unmistakably abused its discretion." *Id.* (quoting *Graefenhain*, 870 F.2d at 1206).

First, Plaintiffs cite no law supporting the proposition that it is improper or unusual to stipulate to choice of law in a Rule 26(f) joint status report. In fact, courts honor reasonable choice-of-law stipulations "regardless of whether such stipulations were made formally or informally, in writing or orally." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). As the Seventh Circuit has stated that "oral" and "informal" choice of law stipulations are enforceable, then a stipulation made in a signed document submitted to the Court must be acceptable.

16

Next, the course of the litigation up to the filing of the January 19, 2010 status report belies Plaintiffs' assertion that they were unaware of specific facts necessary to reach a conclusion as to the choice of Indiana law. See Pl. Resp. to Surreply [71] at 4 ("No discovery had been completed at the time the joint status report was filed and the parties could not have been aware of U.P.S.'s contacts in the forum state, or any other facts pertinent to a determination of choice of law."). As discussed above, the crucial facts for the choice of law determination were (1) the location of the accident (which Plaintiffs obviously knew), and to a lesser extent (2) the citizenship of the parties (which Plaintiffs' knew for a certainty by June 2009, upon receiving Defendant's notice of removal). Plaintiffs have failed to identify a single fact that they learned subsequent to stipulating to Indiana law that could have affected their decision to enter into the stipulation. Any suggestion that Plaintiffs were unaware that U.P.S. has many employees, facilities, and does substantial business in Illinois, Indiana, and across the country would not be credible.

Counsel for Plaintiffs take pains to reiterate to the Court that they are not accusing counsel for Defendant of improperly sneaking the choice of law clause into the joint stipulation. In view of the e-mails exchanged between counsel for Plaintiffs and Defendant (which the parties' have filed with the Court), any such allegation would not be well founded—counsel for Defendant affirmatively raised the issue of an Indiana choice of law provision in more than one e-mail to Plaintiffs' counsel. The remainder of Plaintiffs' arguments boil down to this: the stipulation was arrived at after a "hurriedly exchanged" group of e-mails and was not the product of a "reasoned, calculated discourse" between the parties. (Pl. Resp. to Surreply [71] at 2-5). The Court is unaware of any principle of law that stands for the proposition that a stipulation or agreement between parties is not binding unless it is the product of a lengthy and reasoned

discourse. To the contrary, individuals are presumed to have read the documents to which they affix their signatures. See, *e.g., Dugan v. R.J. Corman R.R. Co.,* 344 F.3d 662, 667 (7th Cir. 2003) (noting that there is no "I didn't read it" defense to breach of contract); *Paper Express, Ltd. v. Pfankuch Maschinen,* 972 F.2d 753, 757 (7th Cir. 1992) (same). If such a presumption applies to laypersons signing contracts, it should apply with even more force to attorneys entering into stipulations on their clients' behalf.

The Court has carefully researched the circumstances under which courts have allowed a party to rescind a stipulation and finds those cases to be dissimilar to the present circumstances. In *Southworth*, for example, the Seventh Circuit upheld a district court's decision to allow a party to withdraw from a stipulation because an intervening Supreme Court decision caused the meaning of their stipulation to take on "a new significance." 307 F.3d at 571-72. Plaintiffs have cited no case (and the Court is unaware of any case) where a court has allowed a party to withdraw from a stipulation under circumstances similar to those here.

**V.     Conclusion**

For the foregoing reasons, the Court holds that Indiana law governs this action. Accordingly, Plaintiffs' motion [50] is denied in part. Defendant's motion to file a surreply, instanter [68] is granted.

Dated:  January 18, 2011

_____
Robert M. Dow, Jr.
United States District Judge